IN THE MATTER OF RICHARD V. ANASTASI, JUDGE OF THE MUNICIPAL COURT OF THE TOWN OF WEST NEW YORK.

Argued May 9, 1978—Decided June 7, 1978.

*Mr. Robert E. Cowen,* designated counsel, argued the cause for the Advisory Committee on Judicial Conduct.

*Mr. Richard V. Anastasi* argued the cause *pro se.*

The opinion of the court was delivered by

CLIFFORD, J.  The Supreme Court Advisory Committee on Judicial Conduct (Committee) issued a presentment charging respondent, Judge of the Municipal Court of West New York, with violating Canons 1 and 2 of the Code of Judicial Conduct.[1] We thereupon ordered respondent to

---

[1]These Canons read as follows:

Canon 1

A Judge Should Uphold the Integrity and Independence of the Judiciary

An independent and honorable judiciary is indispensable to justice in our society.  A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.  The provisions of this Code should be construed and applied to further that objective.

Canon 2

A Judge Should Avoid Impropriety and the Appearance of Impropriety in All his Activities

show cause why he should not be publicly reprimanded for his conduct. Respondent, whose prior record both as judicial officer and practicing attorney is spotless, exhibits a becoming attitude of contrition before this Court and asks that whatever discipline may be imposed be delivered in private; but because of the serious nature of the transgression and its significant effect on the public interest, we adopt the recommendation of the Committee that respondent be publicly reprimanded.

The Committee's attention was drawn to Judge Anastasi's attempt to intercede on behalf of an applicant who had unsuccessfully sought a license from the New Jersey Racing Commission. In due course a complaint and answer were filed and the matter proceeded to a hearing, at which respondent testified fully on his own behalf.

The evidence before the Committee demonstrated that sometime before October 10, 1977, a "client and good friend" of respondent was denied a racing license by the New Jersey Racing Commission because of a prior criminal record in the State of New York. On the aforementioned date a letter was sent to the Racing Commission on official stationery of the Municipal Court for the Town of West New York, signed in the name of respondent, who was and still is the Judge of that Municipal Court. The letter indicated respondent was "shocked and dismayed" to learn that his client had been denied a racing license because of "some incident involving a misdemeanor" which had occurred some twelve years previously, concerning a "conspiracy to violate gambling laws." In urging reconsideration of the

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify as a character witness.

application, respondent's letter continued: "As a Municipal Court Judge I am very familiar with 'Conspiracy to violate gambling laws' [and] [t]he mere fact that it is a misdemeanor indicates the lack of importance that the State has given this particular act."[2] The letter further suggested that to penalize the applicant "would make a mockery of those cliches I use in my court-room quite often such as 'rehabilitation', 'paying a debt back to society' and 'people will take you for what you are today'." As the Committee's presentment observes, respondent "made it abundantly clear in the letter that he was a municipal court judge and, as such, familiar with the magnitude of his client's offense. Despite the latter claim he acknowledged at the hearing that he never inquired of New York authorities as to the nature of the applicant's offense and merely set forth in his letter to the Racing Commission the information given him by his client.

Respondent's position was that unbeknownst to him his secretary had typed the letter, which he had dictated over the telephone, on court stationery; she had then signed it with his name, in keeping with their office procedure (which was to omit the secretary's initials as indicating that she rather than respondent had actually signed the document), and had sent it on to the Racing Commission. His testimony in this regard was supported by his secretary.

The Committee concluded that regardless of whether respondent was aware that official stationery had been used by his secretary (an issue as to which it deemed it unnecessary to make a factual finding or reach any conclusion), his conduct was a violation of Canon 1 requiring a judge

---

[2]The record before the Committee demonstrates that on January 20, 1965 the miscreant had pled guilty to a charge of violating "Section 580-1 Penal Code (conspiracy)" in District Court, Nassau County, had been fined $250 and given a custodial sentence of six months in Nassau County Correction Center. The sentence was suspended and he was placed on probation for one year.

to uphold the integrity and independence of the judiciary. We agree. Respondent admitted dictating the letter. The contents were entirely his. The statements in that document identified his judicial office and, in the words of the presentment, indicated that "he intended to use the prestige and authority of that office to accomplish a personal and private purpose wholly unrelated to his judicial position."

The Committee concluded further, and again we agree, that respondent's statements extolling the applicant and bearing witness to his good name and reputation in the context of an administrative licensing decision violated the spirit if not the letter of Canon 2B, prohibiting a judge from "testifying" as a character witness. We have only recently had occasion to express our unqualified disapproval of a municipal judge's putting the prestige of his judicial office behind an effort to advance the private interests of others. See *In re Vasser*, 75 *N. J.* 357, 362–63 (1978). We there pointed out that the technique demeans not only the particular judge's standing as a member of the judiciary but that of all other judges and the ends of the judiciary as well. *Id.* The instant matter is but another unhappy example of this regrettable conduct.

Respondent's use of the prestige and authority of his municipal judgeship for a plainly improper purpose cannot be claimed to have been inadvertent in view of the unambiguous wording and calculated intent of the letter before us. For his violation of the judicial canons in this regard respondent is hereby reprimanded.

*For reprimand* — Chief Justice Hughes and Justices Sullivan, Pashman, Clifford, Schreiber and Handler and Judge Conford—7.

*Opposed*—None.